# Exhibit A

Fulton County Superior Court
***EFILED***TV
Date: 6/29/2020 2:50 PM
Cathelene Robinson, Clerk

## General Civil and Domestic Relations Case Filing Information Form

☑ **Superior or** ☐ **State Court of** _____ FULTON _____ **County**

| For Clerk Use Only | |
|---|---|
| **Date Filed** __6/29/2020__ <br> **MM-DD-YYYY** | **Case Number** __2020CV337757__ |

**Plaintiff(s)**

KEY        MICHAEL

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|
| DOE 1 | JOHN | | | |
| Last | First | Middle I. | Suffix | Prefix |
| DOE 2 | JOHN | | | |
| Last | First | Middle I. | Suffix | Prefix |
| | | | | |
| Last | First | Middle I. | Suffix | Prefix |

**Defendant(s)**

MOREHOUSE    COLLEGE

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|
| CREWS | DEMARCUS | | | |
| Last | First | Middle I. | Suffix | Prefix |
| SCARBOROUGH | MAYNARD | | | |
| Last | First | Middle I. | Suffix | Prefix |
| ET AL | | | | |
| Last | First | Middle I. | Suffix | Prefix |

**Plaintiff's Attorney** __TIFFANY SIMMONS__     **State Bar Number** __112667__     **Self-Represented** ☐

### Check one case type and one sub-type in the same box (if a sub-type applies):

**General Civil Cases**

- ☐ Automobile Tort
- ☐ Civil Appeal
- ☐ Contempt/Modification/Other Post-Judgment
- ☐ Contract
- ☐ Garnishment
- ☐ General Tort
- ☐ Habeas Corpus
- ☐ Injunction/Mandamus/Other Writ
- ☐ Landlord/Tenant
- ☐ Medical Malpractice Tort
- ☐ Product Liability Tort
- ☐ Real Property
- ☐ Restraining Petition
- ☑ Other General Civil

**Domestic Relations Cases**

- ☐ Adoption
- ☐ Contempt
  - ☐ Non-payment of child support, medical support, or alimony
- ☐ Dissolution/Divorce/Separate Maintenance/Alimony
- ☐ Family Violence Petition
- ☐ Modification
  - ☐ Custody/Parenting Time/Visitation
- ☐ Paternity/Legitimation
- ☐ Support – IV-D
- ☐ Support – Private (non-IV-D)
- ☐ Other Domestic Relations

☐ Check if the action is related to another action pending or previously pending in this court involving some or all of the same: parties, subject matter, or factual issues. If so, provide a case number for each.

_____     _____
        **Case Number**                    **Case Number**

☑ I hereby certify that the documents in this filing, including attachments and exhibits, satisfy the requirements for redaction of personal or confidential information in OCGA § 9-11-7.1.

☐ Is a foreign language or sign-language interpreter needed in this case? If so, provide the language(s) required.

_____   **Language(s) Required**

☐ Do you or your client need any disability accommodations? If so, please describe the accommodation request.

Fulton County Superior Court
***EFILED***TV
Date: 6/29/2020 2:50 PM
Cathelene Robinson, Clerk

## IN THE SUPERIOR COURT OF FULTON COUNTY

### STATE OF GEORGIA

| | |
|---|---|
| MICHAEL KEY; JOHN DOE 1; JOHN DOE 2<br>Plaintiffs,<br><br>v.<br><br>MOREHOUSE COLLEGE, a domestic, not-for-profit Corporation, MOREHOUSE COLLEGE BOARD OF TRUSTEES; JOHN SILVANUS WILSON, JR., Individually and in his capacity as former President of Morehouse College; DAVID A. THOMAS, individually and in his capacity as President of Morehouse College; MAURICE WASHINGTON, individually, and as Associate Vice President for Student Services and the Dean of College at Morehouse College; MICHAEL HODGES, individually, and Senior Vice President and Provost of Academic Affairs at Morehouse College; JOY WHITE, individually, and as Vice President of Legal Affairs and Chief Compliance Officer of Morehouse College; DEMARCUS K. CREWS, individually, and as Interim Director of Housing and Residential Education of Morehouse College; QUISHA BUGGS, individually, and as Resident Advisor for Morehouse College; JOSHUA L. TROUTMAN, individually, and as Associate Coordinator of Resident Education for Morehouse College; TERRAINE L. BAILEY, individually and in her capacity as Title IX Coordinator and Compliance Specialist of Morehouse College; SHAWN MOORE, individually, and as Associate Coordinator of Resident Education; BRITTANY MAXWELL, individually, and as Dean of Dubois House and Douglas Hall at Morehouse College; SOPHIA BRELVI, individually, and as Title IX Coordinator of Morehouse College; MAYNARD SCARBOROUGH, individually, and as OIA Officer at Morehouse College; and MICHAEL SMITH, individually, and as Dean of King Chapel at Morehouse College,<br>Defendants. | CIVIL ACTION FILE NO.<br><br>2020CV337757 |

## COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

COME NOW the Plaintiffs, Michael Key, John Doe 1, and John Doe 2, by counsel, and for their Complaint for Damages and Demand for Jury Trial (hereinafter "Complaint") against Defendants Morehouse College, Morehouse College Board of Trustees individually and as a governing body, John Silvanus Wilson Jr., David A. Thomas, Maurice Washington, Michael Hodges, Joy White, DeMarcus K. Crews, Quisha Buggs, Joshua L. Troutman, Terraine L. Bailey, Shawn Moore, Maynard Scarborough, and Michael Smith, state herein as follows:

## INTRODUCTION

This is an action involving claims under Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681-1688 (hereinafter "Title IX") and various state law causes of action, arising out of sexual harassment, sexual assault, sexual abuse, harassment, abuse of authority, and conspiracy to commit sexual harassment, sexual assault, sexual abuse, harassment, abuse of authority, and either directly, by act and/or omission, conspiracy to conceal, diminish, deny, and/or secret the harassment, abuses, and assaults that is the subject of this complaint.

## PARTIES, JURISDICTION AND VENUE

1.      Mr. Michael Key (hereinafter "Plaintiff Key') was a citizen of the State of Georgia, living in Fulton County, Georgia at all pertinent times during the incidents bringing rise to this Complaint.

2.      Mr. John Doe 1 (hereinafter "Plaintiff Doe 1") was a citizen of the State of Georgia, living in Fulton County, Georgia at all pertinent times during the incidents bringing rise to this Complaint.

3.     Mr. John Doe 2 (hereinafter "Plaintiff Doe 2") was a citizen of the State of Georgia, living in Fulton County, Georgia at all pertinent times during the incidents bringing rise to this Complaint.

4.     Defendant Morehouse College, (hereinafter "Defendant Morehouse") is a private educational institution with its primary campus in Fulton County, Atlanta, Georgia. Upon information and belief, Defendant Morehouse operates as a domestic not-for-profit corporation whose principal office address and location of its registered agent, Dr. Alan D. Robertson, Sr., being 830 Westview Drive SW, Atlanta, Fulton County, Georgia 30314. Venue and jurisdiction are proper as to Defendant Morehouse.

5.     Defendant Morehouse College - Board of Trustees, individually and as a governing body, (hereinafter "Defendant Trustees") is the governing body of Defendant Morehouse College, a private educational institution with its primary campus in Fulton County, Atlanta, Georgia. Upon information and belief, Defendant Trustees oversees the governing policies and compliance of the same by Defendant Morehouse which operates as a domestic not-for-profit corporation whose principal office address and location of its registered agent, Dr. Alan D. Robertson, Sr., being 830 Westview Drive SW, Atlanta, Fulton County, Georgia 30314. Venue and jurisdiction are proper as to Defendant Trustees.

6.     Defendant John Silvanus Wilson, Jr., (hereafter "Defendant Wilson") was employed in Fulton County, Georgia, and at all times relevant to this complaint, Defendant Wilson, served as President of Morehouse College. As President, Defendant Wilson had a legal duty to ensure Morehouse's compliance with the requirements of Title IX. Furthermore, it is believed Defendant Wilson, was and/or is the superior and supervisor of the Defendants as President of Morehouse. He is an individual who may be served at 48B Linnaean Street,

Cambridge, Massachusetts 02138. Venue and jurisdiction are proper as to Defendant Wilson as the events giving rise to Plaintiffs' claims arose in Fulton County, who was employed within Fulton County at the time such events occurred.

7.      Defendant David A. Thomas, (hereafter "Defendant Thomas") is employed in Fulton County, Georgia and during all times relevant to this complaint, Defendant Thomas, served as President of Morehouse College. As President, Defendant Thomas has a legal duty to ensure Morehouse's compliance with the requirements of Title IX. Furthermore, it is believed Defendant Thomas, was and/or is the superior and supervisor of the Defendants as President of Morehouse. He is an individual who may be served at 830 Westview Drive SW, Atlanta, Fulton County, Georgia 30314. Venue and jurisdiction are proper as to Defendant Thomas.

8.      Defendant Maurice Washington, (hereafter "Defendant Washington") is employed in Fulton County, Georgia and during all times relevant to this complaint, Defendant Washington, served as Associate Vice President for Student Services and the Dean of College at Morehouse College. As Associate Vice President, Defendant Washington has a legal duty to ensure Morehouse's compliance with the requirements of Title IX. Furthermore, it is believed Defendant Washington, was and/or is the superior and supervisor of the Defendants as Associate Vice President of Morehouse. He is an individual who may be served at 830 Westview Drive SW, Atlanta, Fulton County, Georgia 30314. Venue and jurisdiction are proper as to Defendant Washington.

9.      Defendant Michael Hodges, (hereafter "Defendant Hodges") is employed in Fulton County, Georgia and during all times relevant to this complaint, Defendant Hodges, served as Senior Vice President and Provost of Academic Affairs at Morehouse College. As

Senior Vice President, Defendant Hodges has a legal duty to ensure Morehouse's compliance with the requirements of Title IX. Furthermore, it is believed Defendant Hodges, was and/or is the superior and supervisor of the Defendants as Senior Vice President of Morehouse. He is an individual who may be served at 830 Westview Drive SW, Atlanta, Fulton County, Georgia 30314. Venue and jurisdiction are proper as to Defendant Hodges.

10.    Defendant Joy White, (hereafter "Defendant White") is employed in Fulton County, Georgia and during all times relevant to this complaint, Defendant White, served as Vice President of Legal Affairs, General Counsel, and Chief Compliance Officer at Morehouse College. As Vice President, Defendant White has a legal duty to ensure Morehouse's compliance with the requirements of Title IX. Furthermore, it is believed Defendant White, was and/or is the superior and supervisor of the Defendants as Vice President of Morehouse. She is an individual who may be served at 830 Westview Drive SW, Atlanta, Fulton County, Georgia 30314. Venue and jurisdiction are proper as to Defendant White.

11.    Defendant DeMarcus Crews, (hereinafter "Defendant Crews") is employed in Fulton County, Georgia and during all times relevant to this Complaint, Defendant Crews, served as Interim Director of Housing and Residential Education, had a legal duty to comply with Title IX and to ensure Morehouse's compliance with the requirements of Title IX. He is an individual who can be served at 830 Westview Drive SW, Atlanta, Fulton County, GA 30314. Venue and jurisdiction are proper as to Defendant Crews.

12.    Defendant Quisha M. Buggs, (hereafter "Defendant Buggs") was employed in Fulton County, Georgia and during all times relevant to this complaint, Defendant Buggs, served as Resident Advisor of Douglas Hall at Morehouse College. Defendant Buggs had a

legal duty to ensure Morehouse's compliance with the requirements of Title IX. She is an individual who may be served at 830 Westview Drive SW, Atlanta, Fulton County, GA 30314. Venue and jurisdiction are proper as to Defendant Buggs.

13.     Defendant Joshua L. Troutman, (hereinafter "Defendant Troutman") was employed in Fulton County, Georgia and during all times relevant to this Complaint, Defendant Troutman, served as Associate Coordinator of Resident Education, had a legal duty to ensure Morehouse's compliance with the requirements of Title IX. Furthermore, it is believed Defendant Troutman, was aware of the actions of Defendant Crews. He is an individual who may be served at 830 Westview Drive SW, Atlanta, Fulton County, Georgia 30314. Venue and jurisdiction are proper as to Defendant Troutman.

14.     Defendant Terraine LaShawn Bailey (hereinafter "Defendant Bailey") was employed in Fulton County, Georgia and it is believed that during times relevant to this Complaint, Defendant Bailey served as Title IX Coordinator and Compliance Specialist. Defendant Bailey had a legal duty to ensure Morehouse's compliance with the requirements of Title IX. She is an individual who may be served at her residence of 1725 High Street, Unit 4, Denver, Colorado 80299. Venue and jurisdiction are proper as to Defendant Bailey.

15.     Defendant Shawn Moore, (hereinafter "Defendant Moore") is employed in Fulton County, Georgia and during all times relevant to this Complaint, Defendant Troutman, served as Associate Coordinator of Resident Education, had a legal duty to ensure Morehouse's compliance with the requirements of Title IX. He is an individual who may be served at 830 Westview Drive SW, Atlanta, Fulton County, Georgia 30314. Venue and jurisdiction are proper as to Defendant Moore.

16.    Defendant Brittany Maxwell, (hereinafter "Defendant Maxwell") is employed in Fulton County, Georgia and during all times relevant to this Complaint, Defendant Maxwell, served as Dean of Dubois House and Douglas Hall, had a legal duty to ensure Morehouse's compliance with the requirements of Title IX. Process of Service will be executed upon location of a valid address for Defendant Maxwell. Venue and jurisdiction are proper as to Defendant Maxwell.

17.    Defendant Sophia Brelvi (hereinafter "Defendant Brelvi") was employed in Fulton County, Georgia and it is believed that during times relevant to this Complaint, Defendant Brelvi served as Title IX Coordinator and Compliance Specialist. Defendant Brelvi had a legal duty to ensure Morehouse's compliance with the requirements of Title IX. Process of Service will be executed upon location of a valid address for Defendant Brelvi. Venue and jurisdiction are proper as to Defendant Brelvi.

18.    Defendant Maynard Scarborough (hereinafter "Defendant Scarborough") was employed in Fulton County, Georgia and it is believed that during times relevant to this Complaint, Defendant Scarborough served as the OIA Officer. Defendant Scarborough had a legal duty to ensure Morehouse's compliance with the requirements of Title IX. Process of Service will be executed upon location of a valid address for Defendant Scarborough. Venue and jurisdiction are proper as to Defendant Scarborough.

19.    Defendant Michael Smith, (hereafter "Defendant Smith") is employed in Fulton County, Georgia, and at all times relevant to this complaint, Defendant Smith, served as Dean of King Chapel at Morehouse College. As Dean, Defendant Smith had a legal duty to ensure Morehouse's compliance with the requirements of Title IX. He is an individual who

may be served at 830 Westview Drive SW, Atlanta, Fulton County, Georgia 30314. Venue and jurisdiction are proper as to Defendant Smith.

20.     Venue and jurisdiction are proper against Defendants under O.C.G.A. §§ 9-10-91 and 9-10-93 as the events giving rise to Plaintiffs' claims arose in Fulton County at Morehouse College located at 830 Westview Drive, Southwest in Atlanta, Fulton County, Georgia.

## GENERAL ALLEGATIONS

### A.  Morehouse College

21.     Defendant Morehouse is a fully accredited, private liberal arts and sciences-based college located in Atlanta, Georgia. Per Defendant Morehouse, it is its policy to maintain a work and academic environment that is free from sexual and gender-based harassment and misconduct, including but not limited to: Contact, Nonconsensual Sexual Intercourse, Rape, Sexual Exploitation, Stalking and Retaliation[1], Sexual Assault, Sexual Violence, Domestic Violence, Dating Violence, Nonconsensual Sexual Contact.

According to Defendant Morehouse, sexual harassment is not tolerated and is defined as the following:

**r) "Sexual Harassment":** includes any of the following behaviors:

i.    Hostile Environment - unwelcome sexual advances, requests for sexual favors, and other visual, verbal, or physical conduct of a sexual nature when the conduct is sufficiently severe or pervasive to deny or limit the victim's ability to participate in or benefit from Morehouse's educational programs or benefits by creating an Intimidating or hostile environment.

ii.    Quid Pro Quo - unwelcome sexual advances, requests for sexual favors, and other visual, verbal, or physical conduct of a sexual nature when submission to such conduct is made either explicitly or Implicitly a term or

condition of an individual's education, living environment, employment, or participation in a college-related activity or program.

iii.   Threats / Intimidation of a Sexual Nature - conduct of a sexual nature, which reasonably would be expected to have the effect of threatening or intimidating the person at whom such conduct is directed.

*Source: http://www.morehouse.edu/titleixpolicies.html.[1]*

22.   Defendant Morehouse College provides on-campus housing, and in the management of the on-campus housing, employs individuals to conduct the oversight of the housing facilities and students while they are residents of the on-campus housing facilities.

**B.   Plaintiff Key is accepted to and enrolls at Morehouse College.**

23.   Plaintiff Key is a young male student, who is a sociology major, and was admitted to Morehouse College in the fall of 2017, despite a very competitive admissions process.

24.   Upon inception of Plaintiff Key's Freshman year, he was assigned to Brazil Hall. It was as a result of this housing assignment that Plaintiff came to know Defendant Crews, as he is the Interim Director of Housing and Resident Education.

**C.   Acts committed against Plaintiff Key by Defendant Crews.**

25.   Throughout 2018 and 2018, Defendant Crews engaged in a prolific course of conduct that was sexual in nature and content, and intended to harass, abuse, and/or assault the Plaintiff Key.

---

[1] *See* Morehouse College's Sexual Misconduct Policy, Section I.I.  Attached as Exhibit A.

26.     Defendant Crews course of conduct included sexual harassment in the form of verbal attacks against Plaintiff Key. Defendant Crews would often pressure Plaintiff Key to "come Out' as homosexual and made repeated statements of the same to Plaintiff Key. Defendant Crews made such unwanted and unwarranted statements as "I told your bitch ass to text me, I could have looked out for you if you needed it", "Get your ass back here.", and "Just get some dick and you'll be alright." after insinuating that Plaintiff Key was experiencing considerable stress due to confusion surrounding his sexual identity. Defendant Crews' statements were made in reference to, and/or directed at Plaintiff, and were made both in private and in the presence of other students.

27.     Defendant Crews course of conduct included sexual abuse and/or sexual assault in the form of unwanted and unwarranted contact against Plaintiff Key which was sexual in nature and/or intent. Defendant Crews repeatedly made contact with the Plaintiff Key by pinching his cheeks and embracing him in a fashion which was construed to express Defendant Crews' sexual attraction to Plaintiff Key and desires to engage in sexual intimacy with Plaintiff Key. Defendant Crews continued to engage in this course of conduct despite Plaintiff Key's indication that Defendant Crews' advances were unwanted.

28.     Defendant Crews' course of conduct included abuse of authority. In his role as Interim Director of Housing and Resident Education, Defendant Crews held a position of authority over Plaintiff Key and used that authority to harass, abuse, assault, and intimidate Plaintiff Key. Additionally, Defendant Crews used his position to prevent Plaintiff Key from exercising his rights as a victim under Title IX.

29.     Defendant Crew's course of conduct included conspiracy with the Defendants to conceal, diminish, deny, and/or secret the harassment, abuses, and/or assaults perpetrated against Plaintiff Key by Defendant Crews, and conspiracy to prevent Plaintiff Key from exercising his rights as a victim under Title IX.

**D.     Acts committed against Plaintiff Key by Defendants.**

30.     One and/or all Defendants engaged in a course of conduct which conspired with Defendant Crews to commit acts that were sexual in nature and content and included but were not limited to harassment, abuse, and/or assault. The Defendants and Defendant Crews further conspired to conceal, diminish, deny and/or secret Defendant Crews' harassment, abuses, and/or assaults against Plaintiff Key. Furthermore, Defendant Crews and the Defendants conspired to prevent Plaintiff Key from exercising his rights as a victim under Title IX.

**E.     Plaintiff Doe 1 is accepted to and enrolls at Morehouse College.**

31.     Plaintiff Doe 1 is a young male student, who was a biology major, and was admitted to Morehouse College in the summer of 2018, despite the need for academic probation.

32.     Upon inception of Plaintiff Doe 1 into the summer program, he was assigned to Douglas Hall. It was as a result of this housing assignment that Plaintiff Doe 1 came to know Defendant Crews, as he is the Interim Director of Housing and Resident Education.

**F.     Acts committed against Plaintiff Doe 1 by Defendant Crews.**

33.     Beginning in the summer of 2018 and continuing into the school year of 2018, Defendant Crews engaged in a prolific course of conduct that was sexual in nature and content, and intended to harass, abuse, and/or assault the Plaintiff Doe 1.

34.     Defendant Crews course of conduct included sexual harassment in the form slanderous attacks against Plaintiff Doe 1. Defendant Crews would often pressure Plaintiff Doe 1 to "come Out' as homosexual and made repeated statements of the same to Plaintiff Doe 1. Defendant Crews made the same such unwanted and unwarranted statements to other students on campus, students who received various favor from Defendant Crews. Defendant Crews would spread rumors about Plaintiff Doe's sexual orientation, coerce others to make similar statements to Plaintiff Doe 1 and confront Plaintiff Doe 1 during conversations with the harassment he had

inflicted upon Plaintiff Doe 1 through other students.  Defendant Crews' statements were made in reference to, and/or directed at Plaintiff Doe 1, and were made both in private and in the presence of other students.

35.     Defendant Crews course of conduct included sexual abuse and/or sexual assault in the form of unwanted and unwarranted contact against Plaintiff Doe 1 which was sexual in nature and/or intent. Defendant Crews repeatedly made contact with the Plaintiff Doe 1 by pinching his cheeks and embracing him in a fashion which was construed to express Defendant Crews' sexual attraction to Plaintiff Doe 1 and desires to engage in sexual intimacy with Plaintiff Doe 1. Defendant Crews continued to engage in this course of conduct despite Plaintiff Doe 1's indication that Defendant Crews' advances were unwanted.

36.     Defendant Crews' course of conduct included harassment of Plaintiff Doe 1 through the act of calling Plaintiff repeatedly late in the night.

37.     Defendant Crews' course of conduct included abuse of authority. In his role as Interim Director of Housing and Resident Education, Defendant Crews held a position of authority over Plaintiff Doe 1 and used that authority to harass, abuse, assault, and intimidate Plaintiff Doe 1. Additionally, Defendant Crews used his position to prevent Plaintiff Doe 1 from exercising his rights as a victim under Title IX.

38.     Defendant Crew's course of conduct included conspiracy with the Defendants to conceal, diminish, deny, and/or secret the harassment, abuses, and/or assaults perpetrated against Plaintiff Doe 1 by Defendant Crews, and conspiracy to prevent Plaintiff Doe 1 from exercising his rights as a victim under Title IX.

**G.     Acts committed against Plaintiff Doe 1 by Defendants.**

39.     One and/or all Defendants engaged in a course of conduct which conspired with Defendant Crews to commit acts that were sexual in nature and content and included but were not

limited to harassment, abuse, and/or assault. The Defendants and Defendant Crews further conspired to conceal, diminish, deny and/or secret Defendant Crews' harassment, abuses, and/or assaults against Plaintiff Doe 1. Furthermore, Defendant Crews and the Defendants conspired to prevent Plaintiff Doe 1 from exercising his rights as a victim under Title IX.

**H.      Plaintiff Doe 2 is accepted to and enrolls at Morehouse College.**

40.     Plaintiff Doe 1 is a young male student, who was accepted and admitted to Morehouse College in 2018 and would leave Morehouse College in 2019.

41.     As part of Plaintiff Doe 2's educational experience, he participated in the Morehouse Work Study program, this is how he came to know Defendant Scarborough, as Defendant Scarborough was the supervisor over the work study program.

**I.      Acts committed against Plaintiff Doe 2 by Defendant Scarborough.**

42.     On or about May 21, 2018 Defendant Scarborough engaged in a course of conduct that was sexual in nature and content, and intended to harass, abuse, and/or assault the Plaintiff Doe 2.

43.     Defendant Scarborough's course of conduct included sexual abuse and/or sexual assault in the form of unwanted and unwarranted contact against Plaintiff Doe 2 which was sexual in nature and/or intent. Defendant Scarborough, on or about May 21, 2018, while in his private residence did assault Plaintiff Doe 2 by caressing him, kissing his stomach, and attempting to remove Plaintiff Doe 2's pants and underwear.

44.     Defendant Scarborough's course of conduct included abuse of authority. In his role as supervisor of the work study program, Defendant Scarborough held a position of authority over Plaintiff Doe 2 and used that authority to harass, abuse, assault, and intimidate Plaintiff Doe 2. Additionally, Defendant Scarborough used his position to prevent Plaintiff Doe 2 from exercising his rights as a victim under Title IX.

45.     Defendant Scarborough's course of conduct included conspiracy with the Defendants to conceal, diminish, deny, and/or secret the harassment, abuses, and/or assaults perpetrated against Plaintiff Doe 2 by Defendant Crews, and conspiracy to prevent Plaintiff Doe 2 from exercising his rights as a victim under Title IX.

**J.     Acts committed against Plaintiff Doe 2 by Defendants.**

46.     One and/or all Defendants engaged in a course of conduct which conspired with Defendant Scarborough to commit acts that were sexual in nature and content and included but were not limited to harassment, abuse, and/or assault. The Defendants and Defendant Crews further conspired to conceal, diminish, deny and/or secret Defendant Scarborough's harassment, abuses, and/or assaults against Plaintiff Doe 2. Furthermore, Defendant Scarborough and the Defendants conspired to prevent Plaintiff Doe 2 from exercising his rights as a victim under Title IX.

## SEXUAL ASSAULT AND MOREHOUSE'S FAILURE TO RESPOND REASONABLY

47.     Each Plaintiff followed procedure and filed a Title IX complaint against either Defendant Crews, and/or Defendant Scarborough, their abusers, respectively.  They were filed with either Defendant Bailey, or Defendant Brelvi, respectively, during their tenure as Title IX Coordinator for Defendant Morehouse.

48.     One and/or all Defendants, working individually or in concert, failed to follow the requirements of Title IX in that they failed to address Plaintiffs' complaints at the time they were initially made, specifically sought to conceal Plaintiffs' complaints against Defendant Crews, and/or Defendant Scarborough, and specifically sought to prevent Plaintiffs from exercising their rights as a victims under the confines of Title IX.

49.     One and/or all Defendants failed to fulfill their responsibilities as Mandated Reporters under Morehouse's Title IX Complaint process. Per Morehouse's policy titled, "Responding to Title IX Complaints of Sexual Discrimination and Harassment":

> *Mandatory/Responsible Reporters must refer reports of misconduct under these policies and guidelines to the Title IX Office, and information brought to their attention is not confidential. All of the following employees are trained on how to identify misconduct and on their duties to redress or report it. Any dean, director, or department head or other similar administrator who becomes aware of information indicating a significant likelihood of sexual harassment must report such information to the Title IX Coordinator. These administrators must respond not only when they received a specific complaint or report alleging improper activity, but also when such matters come to their attention informally. Unconfirmed or disputed allegations should be clearly labeled as such and reports should indicate any steps already taken to investigate or otherwise respond. Administrators and faculty should consult with the Title IX Coordinator or the Director of Student Services prior to responding to any situation involving alleged harassment.*

50.     On or about July 17, 2019, Defendant Morehouse opened an investigation into Plaintiff Key's Title IX complaint. Defendant Morehouse, in concert with all Defendants in this complaint failed to respond to Plaintiff's complaint by waiting more than a year and a half to open an investigation.

51.     On or about May 17, 2018, Defendant Morehouse opened an investigation into Plaintiff Doe 2's Title IX complaint. Defendant Morehouse, in concert with all Defendants in this complaint failed to respond to Plaintiff's complaint in a timely manner as required.

52.     Defendant Morehouse doesn't appear to have ever opened an investigation into Plaintiff Doe 1's Title IX complaint. Defendant Morehouse, in concert with all Defendants in this complaint failed to respond to Plaintiff's complaint in a timely manner as required.

53.     Defendants permitted Defendant Crews and Defendant Scarborough to continue in their positions of authority over students in on-campus housing and the work study program.  This created an environment for Defendant Crews to continue victimizing Plaintiffs Key and Doe 1, and left both Defendant Crews and Defendant Scarborough the freedom victimize other Morehouse students. This reckless behavior is a clear example of the Co-Defendant's culpability and conspiracy in the actions of Defendant Crews and Defendant Scarborough.

54.     To date, and upon available information and belief, Defendant Crews and Defendant Scarborough remain in their roles with Morehouse College, indicative of one and/or all Co-Defendant's continued violations of their Sexual Harassment policies, responsibilities as mandated reporters, and responsibilities to protect all students enrolled at their institution.

## PLAINTIFFS SUFFER DAMAGES
## AND LOSS OF EDUCATIONAL OPPORTUNITIES

55.     After Defendant Crews initiated his campaign of harassment, abuse, and assault, Plaintiffs Key and Doe 1 began to suffer emotionally and academically as a result. Prior to Defendant Crews abuse, Plaintiff Key and Plaintiff Doe 1 enjoyed fulfilling lives of freedom to move around campus, enjoy time with friends and associates, and engage in activities standard for college freshmen. During and subsequent to Defendant Crews attacks, Plaintiff Key and Plaintiff Doe 1's grades began to drop, and they each altered their movements in an attempt to not only avoid Defendant Crews, but moreover to prevent Defendant Crews from inflicting further acts of harassment, abuse, and assault upon them.

56.     Plaintiffs experienced extreme anxiety over the concern of possible encounters with Defendant Crews, and as a result of the Defendants' refusal to address the ongoing offensive and

sexually predatory actions of Defendant Crews. The increased anxiety also led to Plaintiffs increasing self-soothing behaviors, such as their use of tobacco products and/or inebriants.

57.     Plaintiffs suffered extreme emotional distress related to the intentional acts of public embarrassment perpetrated against Plaintiffs by Defendant Crews. This distress impacted Plaintiffs' overall quality of life and their abilities to function effectively in the execution of daily responsibilities.

58.     Plaintiff Doe 2 suffered no less at the hands of Defendant Scarborough, having been forced to endure the same changes including but not limited to avoidance behaviors, loss of educational standing, depression, feelings of sexual violation, and feelings of helplessness.

59.     Plaintiff Doe 2 suffered extreme emotional distress related to the intentional acts of public embarrassment perpetrated against Plaintiff Doe 2 by Defendant Scarborough. This distress impacted Plaintiff's overall quality of life and his ability to function effectively in the execution of daily responsibilities.

<u>**PRIOR ALLEGATIONS RELATING TO**</u>
<u>**DEFENDANT MOREHOUSE AND/OR DEFENDANTS**</u>

60.     On November 8, 2017, a campaign was launched at the campuses of Defendant Morehouse and its Sister college, Spellman. This campaign related to sexual assault awareness on both campuses, which garnered considerable national attention as it related to the alleged gang rape, date rape, sexual abuse, sexual assault, and/or sexual harassment of several Spellman College students by Morehouse College students on and off the campus of Morehouse and Spellman Colleges.

61.     As a result of this campaign, student activists launched a twitter handle with a hashtag of #WeKnowWhatYouDid where students from both campuses appeared to call out their attackers through the social media platform.

62.     Additionally, on December 13, 2018, a suit was filed against Defendant Morehouse and a former professor, Robert Peterson, which involved an allegation of sexually related harassment, assault, and abuse by Peterson against a student traveling abroad as part of Defendant Morehouse's MPAGE program. As a part of that complaint, there is significant implications of Defendant Morehouse's lack of compliance with Title IX. Furthermore, that action indicates an almost identical claim of Defendant Morehouse's conspiracy to cover up the attacks upon the victim by Peterson, failure to protect the victim, failure by every other staff and/or administration member on the trip to meet their requirements as mandated reports, and allowing opportunity for Peterson to victimize other students but allowing him to retain his position of authority over students when there was clear and convincing evidence that Peterson was a sexual predator and a danger to Morehouse College students.

63.     Even more disturbing is other victims and witnesses have come forward (whom shall remain publicly unnamed to ensure the protection of their privacy and related concerns) and expressed that they have had similar experiences with Defendant Crews, and other Morehouse faculty and staff sexually harassing, assaulting, and abusing students; with indications that this had been a prevalent and extensive issue for a period of several years. It is clear that Defendant Morehouse was aware of the actions of it's staff and faculty as it made a very public display of conducting a joint conference with both Morehouse and Spellman in the fall of 2017 to specifically address the issues of sexual harassment, abuse, and assault on their campuses. It is unclear what, if anything, resulted from that conference as there appears to have been no reduction in the victimization of students on Defendant Morehouse's campus.

## COUNTS AGAINST DEFENDANTS INDIVIDUALLY AND AS A WHOLE

### COUNT I:

### Violation of Title IX-20 U.S.C. § 1681 (a)

64.     Plaintiffs re-allege and incorporate all allegations set forth above as though fully set forth herein.

65.     Defendants had actual knowledge of Plaintiffs victimization at the hands of their perpetrators, Defendant Crews and Defendant Scarborough.

66.     The sexual discrimination of one or more Plaintiffs, consisting of Defendant Scarborough and/or Defendant Crews' sexual harassment, abuse, and assault against Plaintiffs was so severe, pervasive and objectively offensive that it barred Plaintiffs' access to equal educational opportunities and benefits.

67.     Plaintiffs were subjected to the discrimination because of the Defendants' deliberate indifference to known acts of harassment, sexual violence, discrimination and retaliation, including, without limitation:

> (a)     Defendant Morehouse's deliberate decision not to investigate Defendant Crews and/or Defendant Scarborough relating to his inappropriately reported behavior relating to students;

> (b)     Defendant Morehouse's deliberate decisions not to comply with its own policies on sexual misconduct, Title IX and sexual harassment, as well as legal requirements of Title IX as set forth in OCR Guidance;

> (c)     Defendant Morehouse's failure to adequately hire, train and employ employees who did not sexually harass students and create a sexually hostile environment;

68.     Had the Defendants not been deliberately indifferent, or conspire to intentionally cover up Plaintiffs harassment and discrimination, and instead complied with its own policies and federal law by promptly preventing Defendant Crews and/or Defendant

Scarborough from further sexual harassment and providing reasonable accommodations for Plaintiffs safety, Plaintiffs would not have been deprived of equal educational opportunities. It is also believed all Defendants were on notice of Defendant Crews' historically harassing and discriminatory behavior regarding other inappropriate interactions with students and should have performed an immediate investigation and put safeguards in place to prevent other students, such as Plaintiff Key and Plaintiff Doe 1, from being sexually harassed and assaulted by Defendant Crews.

69.     For Plaintiffs, Morehouse College has become a sexually hostile environment where their perpetrators, continued to remain on campus without any limitations or restrictions after the repeated complaints and attempts to exercise their victim's rights under Title IX and Defendant Morehouse's own policies.

70.     Only in July of 2019 after Plaintiff Key posted a video publicly on the social media site Twitter detailing the actions of Defendant Crews did Defendant Morehouse take action to address the allegations of Plaintiff Key and Plaintiff Doe 1 and to protect them from Defendant Crews.

71.     Defendants were deliberately indifferent to Plaintiffs' known sexual harassment and the sexually hostile educational environment in which they suffered as a result of failure to institute reasonable accommodations for the Plaintiffs' safety as well as mental well-being, including but not limited to: (i) excluding Defendant Crews and/or Defendant Scarborough from campus after Plaintiffs' first reported their behaviors; (ii) preventing Defendant Crews and/or Defendant Scarborough from sexually harassing Plaintiffs and creating a sexually hostile environment on Morehouse College campus.

72.     As a direct result of Defendant Morehouse's deliberate indifference, individually and jointly, Plaintiffs have suffered losses of educational opportunities and benefits along with injuries, damages and losses, including, but not limited to further emotional distress, fear, anxiety and trauma, damage to and delays in pursuit of higher education.

73.     As a result of the ongoing sexually hostile environment that Defendants deliberately failed to address, Plaintiffs suffered losses of educational opportunities and benefits, along with injuries, damages and losses, including but not limited to: damage to and delays in pursuit of higher education; and fear, anxiety, trauma, and emotional distress.

## **COUNT II**:

### **Breach of Contract**

74.     Plaintiffs re-allege and incorporate all allegations set forth above as though fully set forth herein.

75.     Based on the aforementioned facts and circumstances, Defendant Morehouse breached express and/or implied agreement(s) with Plaintiffs.

76.     Defendant Morehouse's acceptance of Plaintiffs into a degree program at Defendant Morehouse and their subsequent enrollments and payments of tuition fees created an express contract, or alternatively, a contract implied in law or in fact between Defendant Morehouse and Plaintiffs, governed by, *inter alia,* the Sexual Misconduct Policy and the Morehouse Student Handbook, (collectively, the "Regulations") and the parties' reasonable expectations.

77.     The contract formed between Defendant Morehouse and Plaintiffs contained the following provisions, among others, that expressly prohibit sex-based discrimination:

**Section 1**

**Introduction and Policy Language**

1.1     It is the policy of the Morehouse College ("Morehouse" or "the College") to maintain a work and academic environment that is free from sexual and gender-based harassment and misconduct, including, but not limited to: Sexual Assault, Sexual Violence, Domestic Violence, Dating Violence, Nonconsensual Sexual Contact, Nonconsensual Sexual Intercourse, Rape, Sexual Exploitation, Stalking and Retaliation ("Prohibited Conduct").

*Source: Morehouse Sexual Misconduct Policy, pg. 1, attached as Exhibit .*

78.     Furthermore, the Morehouse College Student Handbook provides that the school does not tolerate discriminatory behavior in its statement on harassment:

**Harassment**

Morehouse College prohibits and will not tolerate action and/or behavior of a harassing nature. This includes both sexual and discriminatory harassment and related retaliation. **Any member of the student body, found to be in violation of this policy will be subject to disciplinary action, which may include, but is not limited to, written warning/reprimand, suspension or dismissal.**

*Source: Morehouse College Student Handbook, pg. 53.*

79.     Plaintiffs assert that Defendant Morehouse, amongst other things, breached these guarantees in employing staff members who sexually harassed and assaulted them on campus and/or as a part of school sanctioned activities, creating a hostile environment, directly in contradiction to the school's various policies on discrimination and sexual harassment.

80.     Defendant Morehouse failed to provide Plaintiffs with an environment free from sex-based harassment and discrimination when it failed to ensure they were protected from sexual

harassment and discrimination at the hands of a Morehouse staff members and received adequate assistance thereafter.

81.    As set forth above, Defendant Morehouse materially breached these guarantees of providing an environment free from gender-based discrimination and other contractual provisions as elucidated above.

82.    As a result of Defendant Morehouse's breach of contract with Plaintiffs, Plaintiffs suffered damages in the result of the amount spent on attending Morehouse College and any incidental damages related to their injuries as a result of the sex-based discrimination.

## COUNT: III

### Negligence

83.    Plaintiffs re-allege and incorporate all allegations set forth above as though fully set forth herein.

84.    Defendants knew of the wrongful conduct of Defendant Crews and/or Defendant Scarborough and/or their propensities to act in a dangerous, reckless, offensive, and/or harmful manners. Upon learning of the sexual harassment, Defendants should have immediately begun an investigation as well as put reasonable safeguards in place to protect Plaintiffs interests. Additionally, Defendants should have never allowed a staff member to sexually harass and assault a student and may have had prior knowledge and information that Defendant Crews and/or Defendant Scarborough had a history of behaving inappropriately with students. Defendants had a duty to employ qualified, competent employees who did not sexually assault or harass students and failed to do so in their employment and supervision of Defendant Crews and/or Defendant Scarborough.

85.    Defendants negligently failed to supervise, investigate, and reprimand Defendant Crews and/or Defendant Scarborough and failed to take reasonable steps to ensure

Plaintiffs could safely continue their education at Morehouse, free of sex discrimination and harassment.

86.     As a proximate result of said negligence, Plaintiffs incurred the damages described herein.

## COUNT IV:

### Negligent Hiring, Training, Retention, and Supervision

87.     Plaintiffs re-allege and incorporate all allegations set forth above as though fully set forth herein.

88.     Defendants Morehouse College and Morehouse Board of Trustees had a duty to exercise a reasonable degree of care in hiring properly qualified personnel to work as employees for them.

89.     Defendants Wilson, Thomas, Washington, Hodges, White, Buggs, Troutman, Bailey, Moore, Maxwell, Brelvi, and Does 1-25 had a duty to exercise a reasonable degree of care in hiring, training, and properly supervising qualified personnel to work as employees under their direction and supervision.

90.     Upon information and belief, Defendant Bailey did not have the requisite credentials and training to perform the job of Title IX Coordinator.

91.     Defendants Morehouse College and Morehouse College Board of Trustees knew or should have known about Defendant Bailey's lack of credentials and training required to perform the job of Title IX Coordinator.

92.     Defendant Bailey's continued employment by Defendant Morehouse College and Morehouse College Board of Trustees as Title IX Coordinator, resulted in negligent hiring, training, supervision and retention on their behalf.

93.     Upon information and belief, Defendant Crews did not have the requisite credentials and training to perform the job of Interim Director of Housing and Resident Education.

94.     Defendants Morehouse College and Morehouse College Board of Trustees knew or should have known about Defendant Crews' lack of credentials and training to perform the job of Interim Director of Housing and Resident Education on its behalf.

95.     Upon information and belief, Defendant Scarborough did not have the requisite credentials and training to perform the job of OIA Officer.

96.     Defendants Morehouse College and Morehouse College Board of Trustees knew or should have known about Defendant Scarborough's lack of credentials and training to perform the job of OIA Officer on its behalf.

97.     Defendants Wilson, Thomas, Washington, Hodges, White, Buggs, Troutman, Bailey, Moore, Maxwell, Brelvi, and Does 1-25 knew or should have known about Defendant Crews' lack of credentials and training to perform the job of Interim Director of Housing and Resident Education.

98.     Defendants Wilson, Thomas, Washington, Hodges, White, Buggs, Troutman, Bailey, Moore, Maxwell, Brelvi, and Does 1-25 knew or should have known about Defendant Scarborough's lack of credentials and training to perform the job of OIA Officer.

99.     Defendants Morehouse College, Morehouse College Board of Trustees, Wilson, Thomas, Washington, Hodges, White, Buggs, Troutman, Bailey, Moore, and Does 1-25 knew or should have known about Defendant Crews' lack of sufficient training and propensity for committing acts of sexual harassment, sexual assault, sexual abuse, and abuses of authority.

100.   Defendants Morehouse College, Morehouse College Board of Trustees, Wilson, Thomas, Washington, Hodges, White, Buggs, Troutman, Bailey, Moore, and Does 1-25 knew or should have known about Defendant Scarborough's lack of sufficient training and propensity for committing acts of sexual harassment, sexual assault, sexual abuse, and abuses of authority.

101.   Based upon the aforementioned facts and circumstances, the Defendants and other Morehouse employees and/or agents failed to comply with the policies and procedures required of Title IX as well as Morehouse policies and procedures relating to sexual misconduct, assault, and harassment.

102.   Furthermore, it is believed Defendants Morehouse, Trustees, Wilson, Thomas, Washington, Hodges, White, Bailey, Maxwell, Brelvi, and John Does 1-25, had supervisory authority over Defendants Bailey, Crews, and Scarborough, and negligently hired, trained, supervised and retained them due to Defendants Bailey, Crews, and Scarborough's failure to comply with the requirements of Title IX and Morehouse policies and procedures relating to sexual misconduct, assault and harassment.

103.   Defendants Morehouse, Trustees, Wilson, Thomas, Washington, Hodges, White, and John Does 1-25 breached their duties by negligently hiring Defendant Bailey and in failing to train, supervise, and direct Defendant Bailey in a manner that could have prevented Plaintiffs Key and Doe 1 from the injuries inflicted upon them

104.   Defendants Morehouse, Trustees, Wilson, Thomas, Washington, Hodges, White, Bailey, and John Does 1-25 breached their duties by negligently hiring Defendant Crews, and in failing to train, supervise, and direct Defendant Crews in a manner that could have prevented Plaintiffs Key and Doe 1 from the injuries inflicted upon them.

105.    Defendants Morehouse, Trustees, Wilson, Thomas, Washington, Hodges, White, Bailey, and John Does 1-25 breached their duties by negligently hiring Defendant Scarborough, and in failing to train, supervise, and direct Defendant Crews in a manner that could have prevented Plaintiff Doe 2 from the injuries inflicted upon him

106.    As a proximate result of said negligence, Plaintiffs incurred the damages described herein.

**COUNT V:**

**Conspiracy**

107.    Plaintiffs re-allege and incorporate all allegations set forth above as though fully set forth herein.

108.    Defendants intentionally and specifically conspired to conceal, diminish, deny, and/or secret the misconduct, harassment, abuse, and assault inflicted by Defendant Crews and/or Defendant Scarborough onto Plaintiffs.

109.    Defendants, with Defendant Crews and Defendant Scarborough, by act or omission, conspired to commit sexual harassment, abuse, and assault when they learned of Defendant Crews and Defendant Scarborough's misconducts and failed to take the appropriate steps to protect Plaintiffs.

**COUNTS AGAINST DEFENDANT CREWS: VI, VII, VIII, IX**

**Intentional Infliction of Emotional Distress, Sexual Harassment, Sexual Assault, Sexual Abuse, Harassment, and Abuse of Authority**

110.    Plaintiffs Key and Doe 1 re-allege and incorporates all allegations set forth above as though fully set forth herein.

111.    Based on the information described above, Defendant Crews course of conduct resulted in his intentional infliction of emotional distress and sexual harassment and assault against the Plaintiff.

112.   As a result, Plaintiffs Key and Doe 1 suffered damages and will seek compensation for their emotional distress as a result of Defendant Crews' actions.

## COUNTS AGAINST DEFENDANT SCARBOROUGH: X, XI, XII, XIII

### Intentional Infliction of Emotional Distress, Sexual Harassment, Sexual Assault, Sexual Abuse, Harassment, and Abuse of Authority

1.   Plaintiff Doe 2 re-alleges and incorporates all allegations set forth above as though fully set forth herein.

2.   Based on the information described above, Defendant Scarborough's sexual assault upon Plaintiff Doe 2 resulted in his intentional infliction of emotional distress and sexual harassment and assault against the Plaintiff Doe 2.

3.   As a result, Plaintiff Doe 2 suffered damages and will seek compensation for his emotional distress as a result of Defendant Crews' actions.

## COMPENSATORY DAMAGES

4.   Plaintiffs re-allege and incorporate all allegations set forth above as though fully set forth herein and further states:

5.   As a direct and proximate result of Defendants' conduct as described above, Plaintiffs have incurred and/or may incur medical and/or counseling expenses, suffered severe, permanent emotional distress, loss of educational opportunities, loss of future earning capacity attributable to a Morehouse College degree and will continue to incur such expenses and emotional injuries in the future, all to the damages of Plaintiffs, which exceeds the jurisdictional minimum of this Court.

6.   As a direct and proximate result of the conduct of the Defendants as set forth herein above, the Plaintiffs will incur future losses in the power to labor and earn based on the lost value of a Morehouse degree as well as delays in graduating college, has incurred

and will continue to incur expenses for psychological treatment and care, all to the damage of Plaintiffs which exceeds the jurisdictional minimum of this Court.

## **PUNITIVE DAMAGES**

7.     Plaintiffs re-allege and incorporate all allegations set forth above as though fully set forth herein and further states:

8.     Defendants acted with oppression, fraud, malice, reckless, callous, and/or flagrant indifference in relation to the Plaintiffs in their employing of any adult in an authority position (such as an Interim Director of Housing and Resident Education, or Supervisor of a Work Study Program) who sexually harassed and assaulted Plaintiffs. Additionally, it is believed Defendants were aware of other disturbing behaviors relating to Defendant Crews and/or Defendant Scarborough yet failed to act appropriately to prevent future sexual assault or harassment by Defendant Crews and/or Defendant Scarborough against students.

9.     Defendant Crews and Defendant Scarborough's propensities for abusing their authority, committing acts of sexual abuse and assault, and Defendant Crews and Defendant Scarborough's lack of training and supervision presented a substantial likelihood of injury and harm to students of Morehouse College, including Plaintiffs.

10.     Despite having knowledge of Defendant Crews and/or Defendant Scarborough's propensities for abusing their authority, committing acts of sexual abuse and assault, Defendants allowed Defendant Crews and/or Defendant Scarborough to continue in their positions without providing sufficient training or supervision to protect its students, including Plaintiffs.

11.     By acting with oppression, fraud, malice, reckless, callous and/or flagrant indifference to the Plaintiffs, Defendants caused irreparable harm to the Plaintiffs for

which punitive damages are appropriate (in relation to the above-referenced claims where punitive damages are possible).

12.     As a result of such willful conduct, wantonness, and entire want of care, which would raise the presumption of conscious indifference to the consequences, Plaintiffs are entitled to punitive damages against all the Defendants pursuant to O.C.G.A.§ 51-12-5.1 et. seq.

## ATTORNEY'S FEES AND EXPENSES OF LITIGATION

13.     Plaintiffs hereby incorporate, adopt, and re-allege all paragraphs above as if fully set forth herein.

14.     Each Defendant has acted in bad faith, has been stubbornly litigious, and has caused Plaintiffs unnecessary trouble and expense by forcing them to resort to use of the court system in order to resolve their claims when there is no bona fide controversy. Accordingly, Plaintiffs are entitled to recover the costs of litigation, including reasonable attorney's fees, pursuant to the provisions of O.C.G.A. § 13-6-1.

15.     Each Defendant is liable for Plaintiffs' attorneys' fees and litigation expenses under O.C.G.A. § 13-6-11 and all other applicable law.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff Michael Key, Plaintiff John Doe 1, and Plaintiff John Doe 2 prays for a trial on all issues and judgment against Defendants as follows:

a.  That process and summons issue, as required by law, requiring Defendants to appear and answer Plaintiffs' Complaint for Damages and Demand for Jury Trial;

b.  That the Defendants be found liable for damages sustained by Plaintiffs due to the negligence and/or intentional acts of Defendants;

c.  That Plaintiffs have and recover damages sufficient to compensate them fully, fairly and completely for all losses compensable under Georgia law;

d.  That Plaintiffs have and recover costs of litigation, including reasonable attorney's fees;

e.  That all issues be tried before a jury of twelve persons; and

f.  Any and all such further relief as the Court may deem just and appropriate.

This 13th day of June, 2020

**SIMMONS LAW**

Tiffany Simmons, Esq.
Georgia Bar No. 112667
P.O. Box 191274
Atlanta, Georgia 31119
Tel: (404) 461-8422

**LAW OFFICES OF MARTIN
  & ASSOCIATES**

Corey Martin, Esq.
Georgia Bar No. 940571
P.O. Box 6911
Douglasville, Georgia 30154
Tel: (404) 247-6656

# Sexual Misconduct Policy

## Section 1
## Introduction and Policy Language

**1.1**  It is the policy of the Morehouse College ("Morehouse" or "the College") to maintain a work and academic environment that is free from sexual and gender-based harassment and misconduct, including, but not limited to: Sexual Assault, Sexual Violence, Domestic Violence, Dating Violence, Nonconsensual Sexual Contact, Nonconsensual Sexual Intercourse, Rape, Sexual Exploitation, Stalking and Retaliation ("Prohibited Conduct").

**1.2**  In furtherance of the goal to make Morehouse College an institution free from sexual and gender-based harassment and discriminatory actions, Morehouse College implements this, its "Sexual Misconduct Policy" created in accordance with state and federal law.

**1.3**  Students who engage in Prohibited Conduct are subject to disciplinary action up to and including permanent separation from the College (i.e. expulsion). Students are also subject to disciplinary action for *Aiding, Abetting,* or *Inciting* any of these forms of misconduct.

**1.4**  Bystanders. A Bystander is anyone who observes an emergency or any situation where someone is in need of help. Bystanders play a critical role in the prevention of sexual and relationship violence. Morehouse College promotes a culture of community accountability where bystanders are actively engaged in the prevention of violence without causing harm to themselves or others.

**1.5**  Further, any *Retaliation* against an individual who has complained about sexual harassment or unlawful discrimination, or retaliation against individuals for cooperating with an investigation of a complaint of sexual harassment or unlawful discrimination, is similarly unlawful and will not be tolerated.

**1.6**  ***The Sexual Misconduct Policy and its procedures do not replace the criminal justice system.*** In the event that an individual files a report with Campus Police, the Morehouse College Police Department will report to the Atlanta Police Department certain alleged crimes, including some forms of Sexual Harassment, Domestic Violence, Dating Violence, or Stalking, which occur in Atlanta, Fulton County and constitute a felony under Georgia law.

**1.7**  The Sexual Misconduct Procedures can be found in the <u>Sexual Misconduct Procedures</u> document, which will continually be published on the College's intranet, as well as external website.



EXHIBIT

A

# Section 2
# Applicability, Jurisdiction & Title IX Coordinator Authority

**2.1**  The Sexual Misconduct Policy and its procedures will apply to all complaints by or against students for Prohibited Conduct.  The Policy and the accompanying procedures will also apply to individuals reporting or participating in investigations of such conduct whether made by students, faculty, staff, or third parties, and will take precedence over any other Morehouse College policies and procedures with respect to such complaints.  At this time, this policy does not apply to complaints of harassment, discrimination or misconduct between two non-student Morehouse community members.  Such complaints should be referred to the Office of Human Resources or Campus Police, as appropriate.

**2.2**  Morehouse designates the Title IX Coordinator (Title IX Coordinator") as the individual charged with coordinating efforts to comply with Title IX. The Title IX Coordinator addresses and oversees the investigation and resolution of all complaints related to sexual and gender-based harassment involving students, faculty, staff, visitors, and vendors, including Sexual Misconduct and Assault, Sexual Harassment, Dating Violence, Domestic Violence, or Stalking.

**2.3**  The Title IX Coordinator is available to meet with any person to provide information about resources, interim measures and options for investigation and resolution under this Sexual Misconduct Policy:

> Terraine L. Bailey
> Title IX Coordinator
> Office of General Counsel and Compliance
> 830 Westview Drive, S.W., Gloster Hall, Room 109
> Atlanta, GA 30314
> (p) 470.639.0584
> terraine.bailey@morehouse.edu

**2.4**  Inquiries or complaints concerning the application of Title IX may be referred to the Title IX Coordinator and/or the United States Department of Education:

> United States Department of Education
> Office for Civil Rights
> 61 Forsyth Street, S.W., Suite 19T70
> Atlanta, GA 30303-8927
> Telephone: (404) 974-9406
> Fax: (404) 974-9471
> Email:  OCR.Atlanta@ed.gov

## Section 3
## Definitions

**3.1**  As used in this Policy:

a) **"Aiding, Abetting, or Inciting":** participating in, soliciting, directing, or assisting in Sexual Assault, Sexual Harassment, Domestic Violence, Dating, or Stalking.

b) **"College Premises":**  refers to buildings or grounds owned, leased, operated, controlled, or supervised by the College.

c) **"College-sponsored activity":**  any activity hosted, performed, or conducted on or off College premises that is specifically initiated or supervised by the College.

d) **"Complainant":** a person who alleges that another person or Student Organization violated this Sexual Misconduct Policy.

e) **"Consent":**  clear and unambiguous agreement, expressed in mutually understandable words or actions, to engage in a particular sexual activity. Whether valid consent has been given will be judged based upon what a reasonable person would have understood from such words or actions.

  i. **Consent must be voluntarily given and is <u>not valid</u>:** 1) if obtained by physical force, coercion, or threat; 2) when a person is Incapacitated;3) when an intellectual or other disability prevents a person from having the capacity to give consent; or 4) if consent is given for a particular sexual activity on a prior occasion (cannot be presumed to constitute consent to engage in a different sexual activity or to engage again in a sexual activity).

  ii. **Consent can be withdrawn by either person at any point.**

f) **"Cyberbullying / Media-Based Misconduct**": Photographing or taping someone (via audio, video or otherwise) involved in sexual activity, or in a state of undress, without his or her knowledge or consent. Even if a person consented to sexual activity, photographing or taping someone without his or her knowledge and agreement goes beyond the boundaries of that consent. Dissemination of photographs or video/audio of someone involved in sexual activity, or in a state of undress, without his or her knowledge or consent constitutes a separate and additional act of sexual misconduct."

g) **"Dating Violence":** violence committed by a person:

  i. who is or has been in a social relationship of a romantic or intimate nature with the victim; and

  ii. where the existence of such a relationship shall be determined based on a consideration of the following factors:

    1. the length of the relationship;

    2. the type of relationship; and

    3. the frequency of the interaction between the persons involved in the relationship.

h) **"Domestic Violence":** Felony or misdemeanor crimes of violence committed by a current or former spouse of the victim by:

    i. a person with whom the victim shares a child in common,

    ii. a person who is cohabiting with or has cohabited with the victim as a spouse,

    iii. person similarly situated to a spouse of the victim under the domestic or family violence laws of the jurisdiction where the crime occurred, or

    iv. any other person against an adult or youth victim who is protected from that person's acts under the domestic or family violence laws of the jurisdiction where the crime occurred.

i) **"Force":** The use of physical violence and/or imposing on someone physically to gain sexual access.  Force also includes threats, intimidation (implied threats), and coercion that overcomes resistance or produces consent.

    i. There is no requirement that a person has to resist the sexual advance or request, but resistance is a clear demonstration of non-consent.

    ii. Sexual activity that is forced is by definition non-consensual, but non-consensual sexual activity is not by definition forced.

j) **"Incapacitation":** a person lacks the capacity to give Consent to sexual activity because the person is: asleep, unconscious, mentally and/or physically helpless, or otherwise unaware that sexual activity is occurring.

    i. **Incapacitation is not necessarily the same as legal intoxication**. Where alcohol or other drugs are involved, evaluating Incapacitation requires an assessment of how the consumption of alcohol and/or drugs affects a person's:

        1. decision-making ability; awareness of consequences;

        2. ability to make informed, rational judgments;

        3. capacity to appreciate the nature and quality of the act; or level of consciousness.

    ii. The assessment is based on objectively and reasonably apparent indications of incapacitation when viewed from the perspective of a sober, reasonable person.

    iii. **Intentional Incapacitation:** providing alcohol or other drugs to a person with the intent to render the person Incapacitated.

k) **"Interim Measures":** temporary accommodations or conditions placed upon a Complainant or Responding Party by the Title IX Coordinator to address immediate physical safety and emotional needs following any allegation of violation of the Sexual Misconduct Policy.

l) **"Notification of Outcome":**  a written notification issued to a Complainant and a Respondent following the conclusion of a student judicial proceeding under this Policy.

m) **"Reporting Party":** a person who is aware of, and reports a possible violation under the Sexual Misconduct Policy on behalf of a victim, but who is not personally the victim of the misconduct.

n) **"Respondent":** a student or Student Organization accused of misconduct under this Policy.

o) **"Retaliation":** engaging in conduct that may reasonably be perceived to adversely affect a person's educational, living, or work environment because of their good faith participation in the reporting, investigation, and/or resolution of report of a violation of this Sexual Misconduct Policy; or Discourage a reasonable person from making a report or participating in an investigation under this Sexual Misconduct Policy.

    i. Retaliation includes but is not limited to:

        1. acts or words that constitute intimidation;

        2. threats or coercion intended to pressure a person to drop or support a complaint or to provide false/misleading information in connection with an investigation; and

        3. pressuring a person to participate or refrain from participating as a witness in an investigation.

    ii. Retaliation may constitute a violation of this Sexual Misconduct Policy even when the underlying report made in good faith did not result in a finding of responsibility.

p) **"Sexual Assault":** unwanted or unwelcome touching of a sexual nature, including: fondling; penetration of the mouth, anus, or vagina, however slight, with a body part or object; or other sexual activity that occurs without valid consent.  This definition includes, but is not limited to, rape and other physical sexual acts perpetrated against a person's will or where a person is incapable of giving consent (e.g., due to the student's age or use of drugs or alcohol, or because an intellectual or other disability prevents the student from having the capacity to give consent).

q) **"Sexual Contact":**  the deliberate touching of a person's intimate parts (including genitalia, groin, breast, buttock, or clothing covering any of those areas), or using Force or the threat of Force to cause a person to touch his or her own or another person's intimate parts.

r) **"Sexual Harassment":** includes any of the following behaviors:

    i. <u>Hostile Environment</u> – unwelcome sexual advances, requests for sexual favors, and other visual, verbal, or physical conduct of a sexual nature when the conduct is sufficiently severe or pervasive to deny or limit the victim's ability to participate in or benefit from Morehouse's educational programs or benefits by creating an intimidating or hostile environment.

    ii. <u>Quid Pro Quo</u> – unwelcome sexual advances, requests for sexual favors, and other visual, verbal, or physical conduct of a sexual nature when submission to such conduct is made either explicitly or implicitly a term or condition of an individual's education, living environment, employment, or participation in a college-related activity or program.

    iii. <u>Threats / Intimidation of a Sexual Nature</u> – conduct of a sexual nature, which reasonably would be expected to have the effect of threatening or intimidating the person at whom such conduct is directed.

s) **"Sexual Misconduct":** is a broad term that encompasses sexually motivated misconduct, including conduct of an unwelcome and/or criminal nature. Thus, for purposes of this Policy, Sexual Misconduct includes, but is not limited to:

    i.   Rape;

    ii.   Sexual Exploitation;

    iii.   Nonconsensual Sexual Contact;

    iv.   Nonconsensual Sexual Intercourse;

    v.   Sexual Assault;

    vi.   Sexual Violence;

    vii.   Domestic Violence; and

    viii.   Dating Violence.

t) **"Stalking"**: occurs when a person engages in a course of conduct or repeatedly commits acts toward another person, under circumstances that would place the person in reasonable fear for safety, or of harm or bodily injury to self or others; or reasonably cause substantial emotional distress to the person.

    i.   A course of conduct refers to a pattern of behavior of two or more acts over a period of time that can be reasonably regarded as likely to alarm, harass, or cause fear of harm or injury to that person or to a third party. The feared harm or injury may be physical, emotional, or psychological, or related to the personal safety, property, education, or employment of that individual.

    ii.   Stalking may involve individuals who are known to one another or have an intimate or sexual relationship, or may involve individuals who do not know to one another.

u) **"Student Organization":** a recognized Morehouse student organization, group, or team including but not limited to those devoted to academic, athletic, cultural, Greek life, leadership, pre-professional or other student activities.

v) **"Title IX Coordinator":** the designated College official with ultimate oversight and responsibility for the College's compliance with Title IX of the Higher Education Amendments of 1972, 20 U.S.C. § 1681 et seq. ("Title IX"), implementing regulations and relevant supplemental guidance.

# Section 4
# Student and Student Organization Rights and Expectations

**4.1**   **Confidentiality; Respect for Privacy.**

a) Information regarding Sexual Assault, Sexual Harassment, Domestic Violence, Dating Violence, or Stalking reports, and any investigation or review or those reports, including sanctioning determinations, will be shared among Morehouse officials with a legitimate educational interest or with external individuals or entities only on a need-to-know basis and only as permitted by Morehouse policy and applicable law.

**4.2**   **When a Complainant Requests Confidentiality and Elects Not to Proceed With an Investigation**

a) If the Complainant does not wish to proceed with an investigation and/or requests to remain confidential, Title IX still requires the College to investigate and take reasonable corrective action in response to the Complainant's information.  In such case, College's ability to respond may be limited.

b) The Title IX Coordinator will weigh the Complainant's request(s) for confidentiality and/or wish not to proceed with an investigation against the College's obligation to provide a safe, non-discriminatory environment for all students.

c) Specifically, the Title IX Coordinator will consider the following factors:

   i. The seriousness of the alleged misconduct;

   ii. Whether there have been other complaints of Sexual Misconduct or Sex Discrimination against the accused at the College or any other school or in the nature of prior criminal charges;

   iii. Whether the accused threatened further misconduct or violence against the Complainant or others;

   iv. Whether the Sexual Misconduct or Sex Discrimination was committed by multiple persons;

   v. Whether the Sexual Misconduct involved use of a Weapon;

   vi. The age of the Complainant;

   vii. Whether the University possesses other means to obtain relevant evidence of the misconduct;

   viii. Whether the Complaint reveals a pattern of conduct at a particular location or by a particular individual and or student group or organization;

   ix. The accused's right to receive information about the allegations if the information is maintained by the College as an "education record" under the Family Educational Rights and Privacy Act ("FERPA"); and

   x. Any other information that is relevant under the circumstances.

**4.3**   The Title IX Coordinator or designee will inform the Complainant if the College cannot ensure confidentiality. In an instance where the College must disclose a Complainant's identity, the Title IX Coordinator or designee will inform the Complainant prior to making the disclosure.

**4.4   Mandatory Reporters.**

    a) **Responsible employees** are those who have the authority to address and remedy sexual misconduct and gender-based discrimination or those who a student or another employee would reasonably believe to have such authority or obligation. All supervisors are responsible employees but not all responsible employees are supervisors. Responsible employees must report known details of the incident as well as the names of the Complainant and Respondent.

        i. Examples of responsible employees are Directors, Faculty, Department Heads, Deans, Vice Presidents, Managers, Supervisors, Police Officers, Residential Deans, Coaches, Advisors, Office of General Counsel, Human Resources, and Office of Student Conduct.

**4.5 Confidential Reporting.**

    a) **Confidential employees** are those individuals who have a confidentiality privilege to protect the personal identification of a Complainant.

    b) These confidential employees (i.e. ***health care professional, licensed counselors, etc.***) can fulfill their reporting requirements by making general reports for statistical purposes and pattern tracking but do not divulge personally identifiable information without client consent.

        i. Employees who do not have a confidentiality privilege should not promise confidentiality to the Complainant. An employee can tell the Complainant that he/she will only tell the individuals that must know and will do his/her best to protect the Complainant's identify but cannot promise confidentiality. **<u>If the Complainant wants confidentiality, then he/she must be referred to a confidential employee (i.e. health care provider or licensed counselor).</u>**

**4.6   Protection from Retaliation.**

    a) Morehouse will take appropriate steps to ensure that a person who in good faith reports or participates in a Sexual Assault, Sexual Harassment, Domestic Violence, Dating Violence, or Stalking investigation will not be subjected to Retaliation by the Responding Persons or others.

    b) Anyone who believes that they are experiencing Retaliation is strongly encouraged to report that concern using the procedure for the reporting of Sexual Assault, Sexual Harassment, Domestic Violence, Dating Violence, or Stalking under this Sexual Misconduct Policy.

**4.7   Coordination with Concurrent Legal Proceedings.**   Students may report to law enforcement in connection with the same behavior that forms the basis of Prohibited Conduct under this Sexual Misconduct Policy.

    a) Where a Complainant or another person with knowledge of possible Prohibited Conduct has reported to law enforcement, Morehouse will fulfill its responsibility under Title IX to take prompt and appropriate action to provide protection and resources to the Complainant to the extent permitted by law or policy.

b) A report to law enforcement will not change the College's obligation to potentially investigate the matter but it may briefly delay the timing of the investigation if a law enforcement agency requests that the College delay its process for a reasonable amount of time to allow it to gather evidence of criminal conduct.

**4.8** **Advisor of Choice.**   Both Complainant and Respondent are entitled to have a single advisor and/or observer of their choice accompany them at any meeting related to the Title IX process.   This advisor or observer may be an attorney.   The advisor may not interrupt or interfere with the proceedings and, to the extent they do, Morehouse retains the right to stop the process and remove the advisor.

**4.9** **Conflict of Interest.**   Any persons exercising authority under this Sexual Misconduct Policy who believe they may be unable to exercise that authority impartially in any case shall excuse themselves from the matter and will be replaced with another person.

a) If the Complainant or Respondent believes a person exercising authority under this Sexual Misconduct Policy has a personal, professional, or financial involvement with the Complainant or Respondent that would prevent the person from exercising their authority impartially, they may make a prompt objection to the Title IX Coordinator.

b) If the Title IX Coordinator determines that the objection is reasonable, the challenged person will be replaced with another person.

c) Because Morehouse is a small community, knowledge of or acquaintance with the student(s) and/or witness in a matter, awareness of a matter, participating as a consequence of one's official role in events surrounding a matter, and/or participation in the process prior to the formal disciplinary process, shall not automatically be grounds for disqualification.   The decision of the Title IX Coordinator regarding a challenge is final.

# Section 5
# Additional Matters

**5.1** **Duty of Honesty.**   All Parties and witnesses are obligated to be completely honest during the course of the entire process set forth in the Sexual Misconduct Policy.   Any person who knowingly makes a false statement – either explicitly or by omission – in connection with any part of the process may be subject to separate College disciplinary action.

**5.2** **Duty of Cooperation.**   All Parties and witnesses are obligated to cooperate with the Title IX Coordinator and any persons charged with implementing the Sexual Misconduct Policy.   Any person who knowingly interferes with the actions taken to implement the reporting, investigation, or resolution of matters under the Sexual Misconduct Policy may be subject to separate College disciplinary action.

**5.3** **Recording the Proceedings.**   The Parties are not permitted to make video, audio, or other electronic, photographic, or digital recordings of any meetings or proceedings held under the Sexual Misconduct Policy. The Title IX Coordinator may make exceptions to this prohibition in limited circumstances if he or she concludes, in his or her sole discretion, that a recording is warranted, and upon written request of the Party seeking the recording that explains the need for the recording.

**5.4**   **Follow-up with Complainant.**   Where the Title IX Coordinator deems appropriate, he or she may contact the Complainant to provide an update on the process, the timing and extent of which will be determined by the Title IX Coordinator and depend upon the nature of the allegations and the situation.

**5.5**   **Prohibition Against Retaliation.**   The College will not tolerate retaliation in any form against any persons for their participation or involvement in the reporting, investigation, and/or resolution of matters subject to the Sexual Misconduct Policy.  The College will take appropriate steps to prevent and/or address retaliatory conduct immediately.  The College includes retaliation in its definition of prohibited conduct under this Sexual Misconduct Policy, as well as the College's general prohibition on retaliation.

**5.6**   **Amnesty for Students Reporting Misconduct.**   The College encourages reporting under the Sexual Misconduct Policy and seeks to remove barriers to reporting.  The College generally will not hold a student who reports conduct or is a witness during an investigation under the Sexual Misconduct Policy accountable for disciplinary violations of the College's Community Standards prohibiting use of drugs or alcohol. Under limited circumstances, a person who reports conduct under the Sexual Misconduct Policy may be held accountable for his or her own misconduct if, in the College's discretion, it is determined that the behavior placed the health and safety of any person at risk, or if it created a danger to the College community.  The College retains the right to require students to attend counseling or drug/alcohol related courses even in circumstances in which disciplinary conduct will not be pursued under this part.

**5.7**   **Special Situations.**   The College retains the right to determine, in its sole discretion, if it will address a report of conduct that falls under the Sexual Misconduct Policy administratively and outside of the process described herein when the safety of the College community is at risk, if the material facts are undisputed, if there are extenuating circumstances involving either of the Parties, or if the Title IX Coordinator, in consultation with appropriate administrators, determines it is in the best interest of the College and/or the community to do so.

**5.8**   **Responsible Office.**   The Office of General Counsel & Compliance is the responsible office for updating and maintaining this policy.

# Revision History

Approved by the President; Compliance, Enterprise Risk & Policy Committee; Title IX Committee.  Effective Date August 1, 2016